UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JANA-ROCK CONSTRUCTION, INC.,

                        **Plaintiff,**

           v.                               5:05-CV-1191
                                                (FJS/GJD)

**CITY OF SYRACUSE,**

                        **Defendant.**
_____

**APPEARANCES**                                            **OF COUNSEL**

**MENTER, RUDIN & TRIVELPIECE, P.C.**      **VIC J. KOPNITSKY, JR., ESQ.**
308 Maltbie Street, Suite 200
Syracuse, New York 13204-1498
Attorneys for Plaintiff

**CITY OF SYRACUSE**                        **JAMES P. MCGINTY, ESQ.**
**LAW DEPARTMENT**                      **JOSEPH FRANCIS BERGH, ESQ.**
300 City Hall
233 East Washington Street
Syracuse, New York 13202
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff filed a complaint against Defendant City of Syracuse ("City") in New York State Supreme Court on August 6, 2004. Defendant then removed the case to this Court on September 20, 2005, because the complaint contained claims arising under the laws of the United States. *See* Petition for Removal at ¶¶ 2-3. Plaintiff claims that Defendant's failure to honor its low bid on a city construction contract (1) deprived it of a liberty interest without due process in violation

of the New York and United States Constitutions, (2) deprived it of a property interest without due process in violation of the New York and United States Constitutions, and (3) defamed it under New York State tort law.  *See* Amended Complaint at ¶¶ 68, 73-75.  Currently before the Court is Defendant's motion to dismiss Plaintiff's action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

Plaintiff Jana-Rock Construction, Inc. ("Jana-Rock") entered into a contract with Defendant in 2001 to mill asphalt from and repave certain areas of city streets.  *See id.* at ¶¶ 4-5.  At the job's conclusion, Defendant refused to pay, claiming that Plaintiff's work was defective.  *See id.* at ¶¶ 8-13. The parties disputed this fact, and Plaintiff apparently filed a law suit to recover portions of the unpaid contract.  *See id.* at ¶ 14.  While the suit was pending, in 2004, Defendant let bids for another milling and paving contract.  *See id.* at ¶ 17.  Plaintiff claims that Defendant held a pre-bid meeting at which Defendant told all bidders that it was aware of problems with past contractors and that every bidder was to start with a "clean slate."  *See id.* at ¶¶ 26-27.  Accordingly, Plaintiff alleges, Defendant informed it that it was to be treated as an "acceptable bidder."  *See id.* at ¶¶ 29 & 32.  Ultimately, Plaintiff was the lowest bidder on the 2004 contract; however, Defendant sent Plaintiff a letter, dated May 17, 2004, announcing that it did not consider Plaintiff to be responsible.  *See id.* at ¶ 35.  The letter offered a process for Plaintiff to challenge Defendant's determination that it was not a responsible bidder.  *See id.* at ¶ 44.  Plaintiff claims that it mailed a timely response to Defendant but that Defendant ignored it.  *See id.* at ¶¶ 45-46.

After Plaintiff was deemed an irresponsible bidder, certain City employees communicated this fact to the Town of New Hartford, adding that "Jana-Rock is a bad contractor" and "must be watched at all times." *See id.* at ¶ 55. Defendant also instructed the firm to which it ultimately granted the 2004 contract not to use Plaintiff as a subcontractor. *See id.* at ¶¶ 57-59.

### III. DISCUSSION

A.   **Rule 12(b)(6) standard**

To survive dismissal under Rule 12(b)(6), "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)) (footnote omitted). When resolving a Rule 12(b)(6) motion, the court must assume that the allegations in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *See Cooper v. Pate*, 378 U.S. 546, 546 (1964) (citations omitted). Thus, a court's purpose in considering a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985) (citation omitted).

B.   **Plaintiff's federal due process claims**

In its Amended Complaint, Plaintiff alleges that it was "deprived of liberty and property without due process in contravention of the Federal . . . Constitution[ ]." *See* Amended Complaint at ¶ 68. The Due Process Clause of the Fourteenth Amendment to the United States

Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To prevail on a procedural due process claim, a plaintiff must first show "that he possessed a protected liberty or property interest," and then show "that he was deprived of that interest without due process." *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998) (citation omitted).

### *1. Existence of a property interest*

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972). As such, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (citation omitted). Property interests are not created by the United States Constitution, but by independent sources of law. *See Velez v. Levy*, 401 F.3d 75, 85 (2d Cir. 2005) (quotation omitted). Often, state law or contract creates a property interest. *See id.* Therefore, resolution of the issue begins with an examination of the potential benefits that state law provides. *See Town of Castle Rock*, 545 U.S. at 757.

New York General Municipal Law § 103 states that "all contracts for public work . . . shall be awarded by the appropriate officer, board or agency of a political subdivision or of any district therein  . . . to the lowest responsible bidder. . . ." N.Y. Gen. Mun. Law § 103. However, § 103 also provides that the "officer, board or agency may, in his or its discretion, reject all bids and readvertise for new bids. . . ." *Id.* The New York Court of Appeals has concluded from this

discretionary language that "[n]either the low bidder nor any other bidder has a vested property interest in a public works contract." *Conduit & Found. Corp. v. Metro. Transp. Auth.*, 66 N.Y.2d 144, 148-49 (1985) (citations omitted). Several courts in this Circuit have agreed with *Conduit & Foundation*, holding that a low bid under New York State law is not a property interest under the United States Constitution. *See, e.g., ReSource N.E. of Long Island, Inc. v. Town of Babylon*, 80 F. Supp. 2d 52, 58 (E.D.N.Y. 2000) (citation omitted); *John Gil Constr., Inc. v. Riverso*, 72 F. Supp. 2d 242, 252 n.15 (S.D.N.Y. 1999) (quotation omitted); *Williams v. Salt City Painting, Inc.*, No. 91-CV-0320, 1992 WL 265944, *9 (N.D.N.Y. Oct. 1, 1992) (citation omitted).

Plaintiff attempts to distinguish *Conduit & Foundation*, arguing that, whereas in that case the municipality rejected the entire round of bids and readvertised for a new round, Defendant City rejected only the low bidder in favor of a higher bidder. Section 103, Plaintiff argues, does not allow a municipality complete discretion over the bidding process. It requires the public authority to accept the lowest bid unless it chooses to reject all bids and start anew. The purpose of this provision is to safeguard the welfare of the public by curbing fraud and keeping taxpayer costs down. Plaintiff contends that allowing Defendant City to simply replace a low bidder with a higher bidder would be inconsistent with this policy.

This distinction is not relevant to the federal due process claim, although it may be relevant to whether Plaintiff has a valid state-law claim against Defendant in a proceeding under Article 78 of the New York Civil Practice Law and Rules. The due process inquiry asks whether New York State law creates a vested property interest in a low bid, not whether rejection of the low bid in this case was appropriate. Assuming that Defendant improperly rejected Plaintiff's bid, the fact remains that, in general, after the bidding process is completed and a low bidder is

identified, a municipality may still reject the entire round of bids. *See* N.Y. Gen. Mun. Law § 103. Even if the municipality declines to reject all bids and readvertise, it may still reject a low bidder if it determines that the bidder is irresponsible. *See id.* Thus, under § 103, a low bidder cannot, with any certainty, expect that it will be awarded a public works contract simply by virtue of its low bid. Since New York law affords a municipality this discretion, Plaintiff does not have a vested property interest in the contracts at issue in this case. *See Marinaccio v. Boardman*, No. 1:02 CV 831, 2005 WL 928631, *18 (N.D.N.Y. Apr. 19, 2005) (finding no property interest in a low bid under New York law where the plaintiff was rejected as an irresponsible bidder) (citations omitted).

### 2. Existence of a liberty interest

A liberty interest is found where a plaintiff can demonstrate "(1) the utterance of a statement about [him] that is injurious to [his] reputation, 'that is capable of being proved false, and that he . . . claims is false,' and (2) 'some tangible and material state-imposed burden . . . in addition to the stigmatizing statement.'"[1] *Velez*, 401 F.3d at 87 (quotation omitted). This is often referred to as a "stigma plus" claim. *See id.* The clearest examples of burdens that will satisfy the "plus" prong are termination of government employment and deprivation of property. *See Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004); *Greenwood v. N.Y. Office of Mental Health*, 163 F.3d 119, 124 (2d Cir. 1998).

---

[1] Defendant does not argue that its alleged statements about Plaintiff's professional integrity were not "stigmatizing;" therefore, the Court will not address this issue.

Where a plaintiff's injuries flow solely from the defendant's defamatory statements, a liberty interest has not been infringed. *See, e.g., Sadallah v. City of Utica*, 383 F.3d 34, 38-39 (2d Cir. 2004) (holding that harm to the plaintiff's business was not a "plus" in the "stigma plus" analysis where the burden resulted only from the local mayor's public comments about the condition of the plaintiff's food service facilities). A "stigma plus" claim is satisfied only if there is some action taken in addition to the defamatory statements, such as a change in the plaintiff's legal status restricting his future employment by operation of law. *See, e.g., Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994) (holding that placement of the plaintiff's name in a central registry of child abusers was a "plus" because future employers in the child-care sector were required by law to review this list when making employment decisions).

As discussed, Plaintiff has no property interest in the contracts at issue. Nor is this a case of termination of government employment since Plaintiff is a private firm. Nevertheless, Plaintiff claims that it suffered "plus" factors in the form of (1) loss of the 2004 contract, (2) loss of the 2004 subcontract, and (3) the potential loss of contracts with the Town of New Hartford. *See* Plaintiff's Memorandum of Law at 8.

None of these injuries constitutes a "plus" factor. Plaintiff's loss of these contracts flowed directly from Defendant's allegedly defamatory statements, or, in the case of the 2004 contract, Plaintiff's rejection as an irresponsible bidder *was* the defamatory statement. News of a firm's rejection as an irresponsible bidder may spread to other municipalities and contractors and may significantly diminish its business prospects. This is an inevitable by-product of publicly naming a firm "irresponsible." However, although Defendant determined Plaintiff to be an irresponsible bidder and communicated this fact to others, it did not take any additional action

to prevent Plaintiff's future employment.  The concept of responsibility in this context is statutory and is further defined by New York case law.  *See, e.g., In re Caristo Constr. Corp.*, 30 Misc. 2d 185, 198 (N.Y. Sup. Ct. 1961) ("A responsible bidder is one who possesses sufficient capital resources, skill, judgment, integrity and moral worth. . . ." (citation omitted)).  However, responsibility is not a designation that carries legal significance beyond a single contract bidding process.  There is no statutory requirement, as there was in *Valmonte*, that all firms once deemed irresponsible be categorized as such for the purpose of seeking future employment.  *See Valmonte*, 18 F.3d at 1001.  Accordingly, the Court holds that Plaintiff has not stated a "stigma plus" claim for interference with a liberty interest.[2]

### C.     Plaintiff's state-law claims

Under 28 U.S.C. § 1367(c), "[t]he district court[ ] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining

---

[2] Plaintiff asks the Court to adopt the District of Columbia Circuit's holding in *Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*, 631 F.2d 953, 963-64 (D.C. Cir. 1980) (holding that the plaintiff was deprived of a liberty interest where a municipality denied it a contract, stating that the plaintiff "lacked integrity").  However, the Court finds *Old Dominion*'s reasoning unpersuasive and, more importantly, at odds with Supreme Court and Second Circuit precedent.  Specifically, *Old Dominion* fails to recognize that injuries flowing directly from a defamatory statement by themselves are insufficient to establish a deprivation-of-liberty claim.  *See Sadallah*, 383 F.3d at 39; *see also Siegert v. Gilley*, 500 U.S. 226 (1991) (holding that the plaintiff, a psychologist, did not state a deprivation-of-liberty claim where his former government employer wrote a negative recommendation letter preventing him from obtaining the credentials necessary to work at United States Army hospitals).

to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (citing *Cohill*, 484 U.S. at 350 n.7, 108 S. Ct. 614).  Since the Court dismisses all of Plaintiff's federal claims, the Court dismisses, without prejudice, Plaintiff's remaining state-law claims.

### IV. CONCLUSION

After carefully reviewing the entire file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion to dismiss Plaintiff's federal claims is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's state-law claims are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1367(c); and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: November 5, 2007
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge